CASE NOT YET SCHEDULED FOR ORAL ARGUMENT

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE D.C. CIRCUIT**

AMERICAN LUNG ASSOCIATION,
*et al.*,

Petitioners,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, U.S. Environmental Protection Agency,

Respondents.

Case No. 26-1238
(consolidated with No. 26-1259)

---

**MOTION OF STATE OF WEST VIRGINIA**
**AND 24 OTHER STATES TO INTERVENE AS RESPONDENTS**

JOHN B. MCCUSKEY
ATTORNEY GENERAL

Michael R. Williams
*Solicitor General*
West Virginia Attorney
General's Office
1900 Kanawha Blvd. E
Bldg. 1 Rm. 26E
Charleston, WV 25305
(304) 558-2021
Michael.R.Williams@wvago.gov

*Counsel for Proposed Intervenor*
*State of West Virginia*

In this proceeding for review, Petitioners challenge a decision by the Environmental Protection Agency that repeals most parts of the agency's 2024 carbon pollution standards for fossil-fuel-fired power plants. *See* 91 Fed. Reg. 58,954 (Sept. 17, 2026) ("Final Rule"). Under Federal Rule of Appellate Procedure 15(d) and D.C. Circuit Rule 15(b), the States of West Virginia, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, and Wyoming move to intervene as Respondents.

## BACKGROUND

The Clean Air Act "establishes a comprehensive program for controlling and improving the nation's air quality through state and federal regulation." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 821-22 (5th Cir. 2003). This case involves one part of that program.

Section 7411 of the Clean Air Act authorizes EPA and the States to regulate certain air pollutants emitted by stationary sources. The provision directs EPA to "list" categories of "stationary sources" whose pollutants endanger public health or welfare. *See* 42 U.S.C. § 7411(b)(1). EPA must then establish nationally applicable "standards of performance" for new sources

within that category. *Id.* § 7411(b)(1)(B). In limited circumstances, EPA may also call on States to submit plans containing State-established standards of performance for the same pollutant from existing sources within the same category. *Id.* § 7411(d)(1). A "standard of performance" must reflect the emission limitation that can be achieved by "the application of the best system of emission reduction"—or "BSER"—that "has been adequately demonstrated" to limit emissions from an individual source on a continuous basis, after considering cost and other factors, including energy requirements. *Id.* § 7411(a)(1).

EPA first invoked Section 7411(b) to regulate carbon-dioxide emissions from new power plants (including modified and reconstructed ones) in 2015, promulgating performance standards for both steam generating units and combustion turbines. 80 Fed. Reg. 64,510 (Oct. 23, 2015). Challengers, including many of the States here, then filed petitions for review challenging the 2015 performance standards for new coal-fired facilities; those petitions are in abeyance before this Court. *See North Dakota v. EPA*, No. 15-1381 (D.C. Cir.). No party challenged the performance standards for new gas-fired facilities.

The same day EPA issued the $CO_2$ performance standards for new sources, it separately issued (under Section 7411(d)) a rule—known as the "Clean Power Plan"—to address $CO_2$ emissions from existing gas and coal facilities. 80 Fed. Reg. 64,662 (Oct. 23, 2015). In that rule, EPA declined to implement emission controls at any particular facility. *Id.* at 64,769. Instead, EPA sought to require "generation shifting from higher-emitting to lower-emitting" sources for electricity production. *Id.* at 64,728. EPA anticipated that producers would first shift from coal plants to lower-emitting gas plants. *Id.* Later, EPA expected producers to shift from both coal and gas electric generation to renewable (wind and solar) generation. *Id.* at 64,729, 64,748.

The Clean Power Plan never went into effect. Various petitioners (including many of the States here) immediately challenged the rule, *see West Virginia v. EPA*, No. 15-1363 (D.C. Cir.), and after this Court denied stay motions, Doc. No. 1594951, the Supreme Court granted a stay, *West Virginia v. EPA*, 577 U.S. 1126 (2016). The Affordable Clean Energy Rule then repealed and replaced the Clean Power Plan in 2019. 84 Fed. Reg. 32,520 (July 8, 2019). There, EPA concluded that Section 7411 foreclosed the sort of generation shifting seen in the Clean Power Plan. *Id.* at 32,523. While this Court later held that the Affordable Clean Energy Rule "hinged on a

fundamental misconstruction of Section 7411(d)," *Am. Lung Ass'n v. EPA*, 985 F.3d 914, 930 (D.C. Cir. 2021), the Supreme Court reversed that decision (once more at the behest of many of the States here) in *West Virginia v. EPA*, 597 U.S. 697 (2022).

EPA then issued yet another power plant rule—its third try—in May 2024. That rule promulgated EPA's BSER determinations and performance standards for new and reconstructed gas facilities and modified coal facilities under Section 7411(b) and existing coal facilities under Section 7411(d). 89 Fed. Reg. 39,798 (May 9, 2024). But in this third iteration, EPA ignored the statutory commands to select a BSER that "has been adequately demonstrated" and an emission limitation that is presently "achievable." What's more, the agency erased the States' statutorily delegated discretion to implement source-specific standards, employed accounting tricks to dodge the Clean Air Act's mandate that EPA consider costs, ignored EPA's statutory responsibility to consider energy needs, and relied on flawed modeling and botched math (among other things).

Many of the States here challenged the 2024 Carbon Power Plant Rule. *See West Virginia v. EPA*, No. 24-1120 (D.C. Cir.). They also sought a stay from this Court and the U.S. Supreme Court. Though the rule was not stayed,

the petition for review is fully briefed and argued. The Court held the case in abeyance after EPA announced that it intended to revisit the rule once more.

True to its word, EPA proposed and later finalized a rule partially repealing the 2024 Carbon Power Plant Rule. *See* Partial Repeal of the Carbon Pollution Standards for Fossil Fuel-Fired Electric Generating Units, 91 Fed. Reg. 58,954 (Sept. 17, 2026). Consistent with comments submitted by the States here, the partial repeal rests on a reevaluation of the BSER. *Id.* at 58,955-56, 58,967-68. EPA now acknowledges that 90-percent carbon capture is not the BSER for coal plants that will run past 2038. It is not adequately demonstrated, its costs are unreasonable, and it cannot be achieved by the 2032 compliance date, so the 2024 rule effectively required those plants to shut down: de facto generation shifting. Nor is gas co-firing the BSER for plants retiring before 2039. It is a form of generation shifting barred by *West Virginia*, an inefficient use of natural gas, and unachievable by the 2030 compliance date. *Id.* at 58,956, 58,966-67. EPA also repealed the carbon-capture standards for modified coal plants and new base-load turbines, though it left the Phase 1 efficiency-based standards for new turbines in place for now. *Id.* at 58,956, 58,967. But it concurrently proposed to rescind all greenhouse-gas standards for the source category for lack of statutory authority under

Section 7411. *Id.* at 58,956, 58,968. That comment period is currently open, and the States anticipate supporting that proposal, too.

The lead petitioners—a cadre of special interest groups—filed this petition for review on September 17, 2026. A coalition of States and cities followed in No. 26-1259, and more petitions may follow.

**LEGAL STANDARD**

Federal Rule of Appellate Procedure 15(d) provides that anyone who wishes to intervene in a proceeding for review of an administrative order may move to do so within 30 days after the petition for review is filed. The motion need only contain "a concise statement of the interest of the moving party and the grounds for intervention." FED. R. APP. P. 15(d); *see also Synovus Fin. Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 952 F.2d 426, 433 (D.C. Cir. 1991).

"Rule 15(d) does not provide standards for intervention, so appellate courts have turned to the rules governing intervention in the district courts under Fed[eral] R[ule of] Civ[il] P[rocedure] 24." *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517-18 (7th Cir. 2004); *accord In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017). Sometimes, courts will also consider "the statutory design of the [relevant] act." *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir.

1985). Other times, courts have found it sufficient that no prejudice will result from an otherwise unopposed intervention. *See Int'l Union of Operating Eng'rs, Loc. 18 v. NLRB*, 837 F.3d 593, 596 (6th Cir. 2016).

At bottom, this Court has adopted a relatively liberal approach to intervention, especially when it comes to administrative cases like this one. *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977). "[A] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (cleaned up).

**ARGUMENT**

The factors in Federal Rule of Civil Procedure 24 favor letting the States intervene. Under that rule, "a 'court must permit anyone to intervene' who, (1) '[o]n timely motion,' (2) 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,' (3) 'unless existing parties adequately represent that interest.'" *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022) (quoting FED. R. CIV. P. 24(a)(2)). The Court may also grant intervention if

the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B).

*First*, the States' motion is timely. The States are filing their motion within 30 days, as the relevant federal rule contemplates. FED. R. APP. P. 15(d). The Court has not yet entered a scheduling order, no party has filed anything other than standard procedural filings, and the States' involvement will not delay any of the dates that will be ordered.

*Second*, the States have a direct and unique interest in these proceedings. Most concretely, the Final Rule relieved the States of a federal mandate: the repealed emission guidelines required the States to "develop and submit state plans" for their existing steam generating units. 91 Fed. Reg. at 58,957. If Petitioners prevail, that obligation returns, along with the prospect of a federal plan for any State that declines to submit one. The Final Rule also governs power plants that States and their subdivisions own and operate. *Id.*

For reasons like these, West Virginia and its sister States have now been involved in litigation pertaining to these power-plant-related standards for more than a decade. Their work led to the leading authority defining the operation of Section 7411—*West Virginia v. EPA*, 597 U.S. 697 (2022). And they have remained directly involved in the administrative process leading to

the promulgation of this partial repeal. *See* Att'ys Gen. of the States of W. Va. et al., Comment Letter on the Repeal of Greenhouse Gas Emissions Standards for Fossil Fuel-Fired Generating Units (Aug. 7, 2025), https://tinyurl.com/3uf7m2aw.

The States have stayed involved because of the concrete injuries that can result from improper regulation in this space. Among other things, the 2024 Carbon Power Plant Rule stripped States of their sovereign authority while imposing serious and unrecoverable compliance costs on the States themselves. The rule also threatened to cause energy costs to skyrocket while destabilizing the electricity grid at a time of rapidly rising electricity demand. *See* 91 Fed. Reg. at 58,965 (discussing reliability warnings). These regulations have thus directly affected (and undermined) critical state industries and energy infrastructure. *See generally* Appl. for Stay at 26-38, *West Virginia v. EPA*, 145 S. Ct. 2 (2024) (No. 24A95), 2024 WL 3579345.

Beyond these direct economic effects, the Final Rule raises fundamental questions about how climate-related matters should be addressed—whether through federal administrative agencies, Congress, the States, or other repositories of power. EPA has promulgated the Final Rule in part out of respect for federalism and state authority. *See, e.g.*, 91 Fed. Reg. at 58,956

(recognizing "inefficient use of State resources"). And "[t]he allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States." *Bond v. United States*, 564 U.S. 211, 221 (2011); *see also* Bradford R. Clark, *Separation of Powers As A Safeguard of Federalism*, 79 TEX. L. REV. 1321, 1324 (2001) ("Permitting the federal government to avoid these constraints would allow it to exercise more power than the Constitution contemplates, at the expense of state authority."). Thus, the States should be permitted to speak up for it. No wonder, then, that this Court has allowed States to intervene in the many previous challenges arising under Section 7411. *See, e.g.*, Order, *West Virginia v. EPA*, No. 24-1120 (D.C. Cir. June 6, 2024), Doc. No. 2058199; Order, *Am. Lung Ass'n v. EPA*, No. 19-1140 (D.C. Cir. Nov. 18, 2019), Doc. No. 1816311.

Leaving the States out would impair their interests. Vacating the Final Rule would reinstate the 2024 standards, *see Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983) (per curiam), and with them the state-plan obligations described above. And this case will decide questions that the States' own petition in No. 24-1120 also presents, including whether the 2024 BSER were adequately demonstrated and achievable and how *West Virginia* applies to them. A ruling here would, as a practical matter, control there. *See*

*Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). Even beyond the pending actions, if the 2024 standards were reinstated, then the States "might protect their rights by bringing a separate lawsuit." *Brewer*, 863 F.3d at 873 (cleaned up). That kind of "separate litigation would be difficult and burdensome." *Id.* (cleaned up). And damage to the States' interests while that secondary litigation wends its way through again would be "substantial and likely irreparable." *Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).

To the extent the Court requires it, these interests also afford the States standing. *See Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015). Vacatur of the Final Rule would reimpose state-plan obligations and compliance costs on the States, *see* 91 Fed. Reg. at 58,957, an injury caused by the relief Petitioners seek and redressed by denial of the petition. Because a successful challenge would make the States' task of complying with the Clean Air Act "more difficult and onerous," *West Virginia v. EPA*, 362 F.3d 861, 868 (D.C. Cir. 2004), they have standing.

*Third*, Respondents will not adequately represent the States' interests. The States expect that Respondents will defend the Final Rule vigorously. But the parties' relevant interests don't "overla[p] fully." *Berger*, 597 U.S. at 197. EPA has taken four different positions on these standards in eleven

years; the States' sovereign and proprietary interests have not changed. Circumstances like these explain why this Court has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. Beyond consistency, the States also bring their own legal and factual perspective—as the parties who litigated *West Virginia* and prompted its major-questions holding, and as the sovereigns who would have to write state plans for their own plants and grids. At the very least, the States are in a better position to counter anticipated arguments from other States—like the state petitioners in consolidated case No. 26-1259—about the consequences of the Final Rule for States themselves. *See, e.g.*, 91 Fed. Reg. at 58,955 (noting that warnings from "numerous States" were an impetus for the present repeal). So because the burden on the applicant of demonstrating a lack of adequate representation "should be treated as minimal," the States have more than met the obligation to do so here. *Fund for Animals*, 322 F.3d at 736. That's especially so considering that a "governmental party['s]" interests generally "differ[] from other parties, public or private, that assert their own interests, even when these interests coincide." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 992 n.21 (2d Cir. 1984).

Beyond the Rule 24(a) factors, the other factors favor the States, too. For instance, the Clean Air Act's statutory design favors intervention. The Act "regulates air quality through a federal-state collaboration." *Ohio v. EPA*, 603 U.S. 279, 283 (2024) (cleaned up). States thus play a central role in cases involving the Act, this one included. And given that the States have acted quickly to intervene, their involvement should not prejudice any party. Indeed, state involvement in environmental litigation of this sort has become routine in this Court. So the States do not expect any party to oppose their involvement here, either.

At a minimum, the Court should permit the States to intervene under the Rule 24(b) standards. The States challenged the 2024 Carbon Power Plant Rule on many of the same grounds that EPA has now used to repeal it—and Petitioners attack precisely that reasoning. So the States' anticipated defense necessarily shares common questions of law and fact with the main action. *See EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

## CONCLUSION

The States respectfully request that the Court grant their motion to intervene as Respondents.

Respectfully submitted,

JOHN B. MCCUSKEY
ATTORNEY GENERAL

/s/ Michael R. Williams
Michael R. Williams
*Solicitor General*
West Virginia Attorney
General's Office
1900 Kanawha Blvd. E
Bldg. 1 Rm. 26E
Charleston, WV 25305
(304) 558-2021
Michael.R.Williams@wvago.gov

*Counsel for Proposed Intervenor*
*State of West Virginia*

STEVE MARSHALL
ATTORNEY GENERAL

/s/ A. Barrett Bowdre
A. Barrett Bowdre
*Solicitor General*
State of Alabama
Office of the Attorney General
501 Washington Ave.
Montgomery, AL 36130
(334) 242-7300
Barrett.Bowdre@AlabamaAG.gov

*Counsel for Proposed Intervenor*
*State of Alabama*

CORI MILLS
ACTING ATTORNEY GENERAL

Jessica M. Alloway
*Acting Solicitor General*

/s/ Thomas Mooney-Myers
Thomas Mooney-Myers
*Assistant Attorney General*
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
907.269.3035
thomas.mooney-myers@alaska.gov

*Counsel for Proposed Intervenor*
*State of Alaska*

TIM GRIFFIN
ATTORNEY GENERAL

/s/ Joseph Nelson
Joseph Nelson
*Senior Assistant Attorney General*
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
(501) 301-0259
joseph.nelson@arkansasag.gov

*Counsel for Proposed Intervenor State of Arkansas*

JAMES UTHMEIER
ATTORNEY GENERAL

/s/ Hunter R. Pratt
Jason J. Muehlhoff
*Chief Deputy Solicitor General*
Hunter R. Pratt
*Deputy Solicitor General*
Office of the Florida Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3839
hunter.pratt@myfloridalegal.com
jenna.hodges@myfloridalegal.com

*Counsel for Proposed Intervenor State of Florida*

CHRISTOPHER M. CARR
ATTORNEY GENERAL

/s/ John Henry Thompson
John Henry Thompson
*Solicitor General*
Office of the Georgia Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3373
jhthompson@law.ga.gov

*Counsel for Proposed Intervenor State of Georgia*

RAÚL R. LABRADOR
ATTORNEY GENERAL

/s/ Michael A. Zarian
Michael A. Zarian
*Solicitor General*
Office of the Idaho Attorney General
700 W. Jefferson St., Suite 210
Boise, Idaho 83720
(208) 334-2400
michael.zarian@ag.idaho.gov

*Counsel for Proposed Intervenor State of Idaho*

THEODORE E. ROKITA
ATTORNEY GENERAL

/s/ James A. Barta
James A. Barta
*Solicitor General*
Office of the Attorney General
of Indiana
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-0709
james.barta@atg.in.gov

*Counsel for Proposed Intervenor State of Indiana*

BRENNA BIRD
ATTORNEY GENERAL

/s/ Eric H. Wessan
Eric H. Wessan
*Solicitor General*
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for Proposed Intervenor State of Iowa*

KRIS W. KOBACH
ATTORNEY GENERAL

/s/ Dwight R. Carswell
Dwight R. Carswell
*Solicitor General*
Kansas Attorney General's Office
120 SW 10th Ave.
Topeka, KS 66612
(785) 296-2215
dwight.carswell@ag.ks.gov

*Counsel for Proposed Intervenor State of Kansas*

RUSSELL COLEMAN
ATTORNEY GENERAL

/s/ Matthew F. Kuhn
Matthew F. Kuhn
*Solicitor General*
John H. Heyburn
*Principal Deputy Solicitor General*
Jacob M. Abrahamson
*Deputy Solicitor General*
Office of Kentucky Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jack.Heyburn@ky.gov
Jacob.Abrahamson@ky.gov

*Counsel for Proposed Intervenor Commonwealth of Kentucky*

ELIZABETH B. MURRILL
ATTORNEY GENERAL

/s/ Kelsey Smith
J. Benjamin Aguiñaga
*Solicitor General*
Kelsey L. Smith
*Deputy Solicitor General*
Louisiana Department of Justice
1885 N. 3rd Street
Baton Rouge, LA 70804
(225) 326-6766
AguinagaJ@ag.louisiana.gov
SmithKel@ag.louisiana.gov

*Counsel for Proposed Intervenor State of Louisiana*

LYNN FITCH
ATTORNEY GENERAL

/s/ Justin L. Matheny
Justin L. Matheny
*Deputy Solicitor General*
Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Proposed Intervenor State of Mississippi*

CATHERINE L. HANAWAY
ATTORNEY GENERAL

/s/ Louis J. Capozzi III
Louis J. Capozzi III
*Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63188
(573) 645-9662
Louis.Capozzi@ago.mo.gov

*Counsel for Proposed Intervenor State of Missouri*

AUSTIN KNUDSEN
ATTORNEY GENERAL

/s/ Christian B. Corrigan
Christian B. Corrigan
*Solicitor General*
Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
Christian.Corrigan@mt.gov

*Counsel for Proposed Intervenor State of Montana*

MICHAEL T. HILGERS
ATTORNEY GENERAL

/s/ Zachary B. Pohlman
Zachary B. Pohlman
*Principal Deputy Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
zachary.pohlman@nebraska.gov

*Counsel for Proposed Intervenor State of Nebraska*

DREW W. WRIGLEY
ATTORNEY GENERAL

/s/ Philip Axt
Philip Axt
*Solicitor General*
Office of Attorney General of North Dakota
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for Proposed Intervenor State of North Dakota*

D. ANDREW WILSON
ATTORNEY GENERAL

/s/ Mathura J. Sridharan
Mathura J. Sridharan
*Solicitor General*
Office of the Ohio Attorney General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
Mathura.Sridharan@ohioago.gov

*Counsel for Proposed Intervenor State of Ohio*

GENTNER DRUMMOND
ATTORNEY GENERAL

/s/ Garry M. Gaskins, II
Garry M. Gaskins, II
*Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

*Counsel for Proposed Intervenor State of Oklahoma*

ALAN WILSON
ATTORNEY GENERAL

/s/ James Emory Smith, Jr.
James Emory Smith, Jr.
*General Counsel*
Office of the South Carolina Attorney General
P.O. Box 11549
Columbia, SC 29211
Ph.: 803-734-3680
Fax: 803-734-3677
ESmith@scag.gov

*Counsel for Proposed Intervenor State of South Carolina*

JONATHAN SKRMETTI
ATTORNEY GENERAL AND REPORTER

/s/ Zachary Clark
Zachary R. Clark
*Director of Strategic Litigation*
Office of the Tennessee Attorney General & Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-7403
Zachary.Clark@ag.tn.gov

*Counsel for Proposed Intervenor State of Tennessee*

MARTY J. JACKLEY
ATTORNEY GENERAL

/s/ Amanda Miiller
Amanda Miiller
*Deputy Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: amanda.miiller@state.sd.us

*Counsel for Proposed Intervenor State of South Dakota*

KEN PAXTON
ATTORNEY GENERAL

Brent Webster
*First Assistant Attorney General*
Ralph Molina
*Deputy First Assistant Attorney General*
William D. Wassdorf
*Deputy Attorney General for Civil Litigation*
Kellie E. Billings-Ray
*Chief, Environmental Protection Division*

/s/ Ian Lancaster
Ian Lancaster
Assistant Attorney General
D.C. Circuit Bar No. 65461
Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911
Ian.Lancaster@oag.texas.gov

*Counsel for Proposed Intervenor State of Texas*

DEREK BROWN
ATTORNEY GENERAL

/s/ Stanford E. Purser
Stanford E. Purser
*Solicitor General*
Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, UT 84111
(385) 382-4334
Spurser@agutah.gov

*Counsel for Proposed Intervenor State of Utah*

KEITH G. KAUTZ
ATTORNEY GENERAL

/s/ D. David DeWald
D. David DeWald
*Deputy Attorney General*
Office of the Attorney General of Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
david.dewald@wyo.gov

*Counsel for Proposed Intervenor State of Wyoming*

Dated: October 14, 2026

## CERTIFICATE OF COMPLIANCE

I certify that this motion contains 2,753 words, excluding exempted portions, and was composed using Microsoft Word 365 in 14-point CenturyExpd BT font. The motion complies with all applicable type-volume and typeface requirements.

Dated: October 14, 2026

/s/ Michael R. Williams
Michael R. Williams

## CERTIFICATE OF PARTIES AND AMICI

As Circuit Rules 27(a)(4) and 28(a)(1)(A) require, I certify that the parties and amici in this case are listed below.

Petitioners: Petitioners in No. 26-1238 are the American Lung Association, American Public Health Association, Clean Air Council, Clean Wisconsin, Environmental Defense Fund, and Natural Resources Defense Council. Petitioners in No. 26-1259 are the State of New York, State of Arizona, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Hawaii, State of Illinois, State of Maine, State of Maryland, Commonwealth of Massachusetts, State of Michigan, State of New Jersey, State of New Mexico, State of North Carolina, State of Oregon, Josh Shapiro, in his official capacity as the Governor of the Commonwealth of Pennsylvania, State of Rhode Island, State of Vermont, State of Washington, State of Wisconsin, District of Columbia, City of Chicago, Illinois, City and County of Denver, Colorado, and City of New York, New York.

Respondents: Respondents are the United States Environmental Protection Agency and Lee Zeldin, in his official capacity as Administrator of the EPA.

Intervenors: There are no intervenors at the time of this filing. The National Rural Electric Cooperative Association has moved to intervene in support of Respondents.

Amici Curiae: There are no amici curiae at the time of this filing.

Dated: October 14, 2026

/s/ Michael R. Williams
Michael R. Williams